### In re CONNELLY.

(District Court, E. D. New York. April 19, 1913.)

BANKRUPTCY (§ 178*)—SALE TO BANKRUPT—RETURN OF PROPERTY—PROCEEDS.
Where W. sold an automobile truck to a bankrupt under an oral contract, making no attempt to reserve title for the unpaid portion of the price, and, with knowledge that the bankrupt was insolvent and that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bankruptcy was impending, accepted a return of the machine, which he sold, and deposited the proceeds to the credit of a bank account in the name of another in alleged payment of a false debt, the transaction constituted a fraud as against the bankrupt's creditors, and W. was properly required to surrender the proceeds of the sale to the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. § 178.*]

In Bankruptcy. In the matter of bankruptcy proceedings against Daniel Connelly, alleged bankrupt. Proceeding to compel one Weissman, brother-in-law of the bankrupt, to turn over to the trustee an automobile truck, or the proceeds of a sale thereof. Granted.

Marshall B. Clarke, of New York City, for petitioning creditors.
Harold R. Zeamans, of New York City, for intervening creditor.

CHATFIELD, District Judge. It appears from the testimony that the bankrupt was assisted by his brother-in-law, one Weissman, and other parties, to engage in the sale of automobile supplies, although he had had no experience therein and had no capital; that this brother-in-law and the other parties interested gave unfounded and reckless statements of credit to the various parties who were referred to them by Connelly, the bankrupt, in pursuance of a deliberate plan, understood by Connelly and his brother-in-law and the other individuals concerned, prior to the beginning of the business venture. The brother-in-law, Weissman, claims to have loaned Connelly some $1,800, for which he received nothing in return, and also to have sold Connelly an automobile truck for the sum of $1,200, which Connelly was to pay back in monthly installments of $200 each, and of which but one installment was paid at about the time the sale was made, but when this was Weissman cannot state. This automobile truck was never marked with any sign denoting that it was the property of any one, except as it bore the manufacturer's labels, and was kept in a garage where Weissman made his headquarters and conducted a sales business in automobiles in the borough of Manhattan. This garage was the property of one Mary O'Bierne, who is the mother of the person really conducting the business and responsible therefor. Connected also with this garage is a livery stable, owned by George O'Bierne, the son and manager of his mother's garage. This George O'Bierne is one of the persons who deliberately and knowingly endeavored to secure credit for Connelly by reckless and unfounded statements as to his financial responsibility. It appears that Connelly either made an entire failure of the automobile supply business, or has not accounted for the proceeds, if they were not lost as he alleges. Connelly's testimony is not definite nor persuasive as to any of the matters upon which he is examined, and he voluntarily admitted that his earlier testimony was false in several particulars, and that he had no regard for accuracy of statement, even when testifying.

Early in the month of December, Connelly, according to the testimony, found himself unable to make a further payment on account of the automobile truck, and it was taken back by Weissman, either on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the day before or the day after Christmas, in liquidation of the balance due; that is, $1,000. Weissman's testimony was to the effect that a conditional bill of sale had been given; but it subsequently appears, and is admitted on this motion, that nothing but an oral arrangement was had. Hence the statute of the state of New York as to conditional sales, being section 63 of the Personal Property Law as adopted in 1909 (Consol. Laws 1909, c. 41), was never in any way complied with, and the simple situation existed of Connelly's having a truck for which he had not fully paid, and of surrendering it in order to wipe out the debt. This of itself would show a preferential transfer, for the evidence is conclusive that both Weissman and Connelly knew all of the facts, and knew that Connelly was insolvent, but would be absolutely void if Connelly were secreting his assets to defraud creditors.

While the truck was still in Weissman's possession, he was examined under section 21a of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430]), and testified that he had the truck. During the same day, and after warning with respect thereto, he sold it to an outside party for the sum of $800, and turned over this amount to George O'Bierne, manager of the garage, who deposited it in his mother's bank account in payment on account of an alleged loan which Weissman and George O'Bierne state was owing to Mrs. O'Bierne for money advanced. It appears from the testimony that Weissman has at various times put money in the O'Bierne bank account for his own convenience, and has received the same back when desired. Neither he nor the O'Biernes furnish any evidence of debt, nor show any testimony which can be believed as to a loan by the O'Biernes to Weissman, and the entire story of their loans is such as to satisfy the court that the proceeds of this truck, viz., the said sum of $800, are still in the control of Weissman, and merely deposited by him with the O'Biernes for his own protection.

The receiver and the petitioning creditors have asked that Weissman be compelled to turn over the automobile truck, or the proceeds thereof, and be punished for contempt of court for disposing of the same, unless he restore the property to the estate. He has objected to any such order, on the ground that the court has no jurisdiction over him or the fund, and that he is the holder of the property under a bona fide claim of title. He also denies that he was in contempt of any order of this court in selling the automobile and using the proceeds. It would appear that no order had been previously made restraining Weissman, and, if the automobile truck were his, that a bona fide sale and use by him of the proceeds was within his rights. We must therefore consider the question as to whether the automobile truck was the property of the bankrupt estate in such a way that, even if Weissman had disposed of it to an innocent holder, he was bound to account for the proceeds thereof to the estate; it being evident that, after his examination as to the whereabouts of this truck, and as to Connelly's title thereto, he had notice, and the record shows that this claim was particularly called to his attention.

If Weissman was a bona fide creditor, and if his debt was paid preferentially, then the present application must be denied, and the creditors left to a suit against him to secure the return of the prefer-

ence. But it appears from the testimony that Weissman was in no way a creditor. His claim of loans is not substantiated. His claim of the conditional sale of the automobile proves to have been merely a transfer of title to Connelly, who was to pay for the automobile, although it had not been delivered. In fact, a chauffeur representing Weissman always went along with the machine when it was allowed to be brought to Brooklyn for Connelly's use, and it was returned to New York and into Weissman's possession as soon as Connelly's needs were supplied. Such a sale was in no sense conditional, nor was there any security to the vendor in the ordinary sense of the term. As a matter of fact, Connelly would have been merely making deposits with a view to future purchases, if title had not yet passed. But as title had passed, and Weissman was acting as agent for Connelly in taking care of the machine, then a claim against Connelly existed for the balance of the purchase price, and an arrangement by Weissman to take back the machine was not merely an attempt to get a preference, but was a plain endeavor on the part of both Weissman and Connelly to conceal some of Connelly's assets, in contemplation of what both must have known would result in bankruptcy proceedings; that is, a plan on the part of both Connelly and Weissman to defraud Connelly's creditors. Such a fraud could pass no title, and if, while in the possession of the machine, Weissman sold it for $800, and deposited the $800 with the O'Biernes for an alleged loan, which the court finds does not exist, then Weissman should be compelled to turn over the $800 to the bankrupt estate.

An order to that effect may be entered.